## DANIEL BUDD, Trustee, et al. *vs.* PHILIP HILER.

1. A trustee, appointed by the Orphans' Court in the place of one that has died, may maintain an action for money had and received against a person who has money in his hands which justly belongs to the trust estate, although the money was received before the appointment of the trustee.

2. If such a trustee has been irregularly appointed, he may nevertheless act and sue as such until his appointment is set aside, if the Orphans' Court had jurisdiction in the case.

3. Crops growing on the homestead farm at the time of the testator's death go to the devisee, if the land is devised, and if there is no devise of the land, then to the executor of the testator, and not to the widow, who remains in possession until her dower is assigned.

4. If an administrator, who takes and sells the growing crops, is sued by the trustee of the devised property for money had and received, he is entitled to an allowance for a note taken in part payment, which turned out not to be good; and if he erroneously charges himself with the proceeds

Budd v. Hiler.

of the sale, and settles his account in the Orphans' Court, such settlement is no bar to an action brought by the trustee to recover the money.

5. The Orphans' and Prerogative Courts have jurisdiction to settle what are assets, as between the administrator and those interested in the estate, but such settlement does not affect the right of the devisee to the growing crops.

6. Where goods are tortiously taken and sold, the owner may waive the tort, and bring an action for money had and received to recover the money received for them.

This case came before the court upon questions reserved on the trial before the Circuit Court of the county of Morris. The facts sufficiently appear in the opinions delivered.

Argued at November Term, 1857, before the CHIEF JUS-TICE, and Justices ELMER, POTTS, and HAINES, by *Dalrimple*, for the plaintiff, and by *Scofield* and *Whelpley*, for the defendant.

The CHIEF JUSTICE. The action is brought by the trustee of a married woman, to recover the value of certain emblements growing on a farm devised to the *cestui que trust* at the death of the devisor. The crops were claimed by the widow of the testator, the farm being his homestead, and she entitled to dower in his estate. They were also claimed by the administrator with the will annexed on behalf of the residuary legatee. The executor was also the trustee of Phebe Ann Bartles, named in the will; but he having died before entering upon his duties as trustee, the present plaintiff was appointed trustee in his stead. On the trial, various questions were reserved for the consideration of the court at bar, which are now to be disposed of.

Among the numerous questions raised and elaborately argued by counsel, I propose to consider, first, those which relate to the merits of the case, and then those which pertain to the form and mode of proceeding.

I. Where land is devised, the growing crops standing on the land at the death of the devisor go to the devisee, and not to the executor of the devisor. As between the

heir and the executor of the testator, a contrary rule prevails. The emblements are deemed personal property, and go to the executor. The true reason of the distinction seems to be that the devisee takes as purchaser, and on a sale of land the emblements pass with the title. Whatever be the ground of the distinction, the rule is well settled. 1 *Gilbert's Ev.* (*ed.* 1795) 500; *Toller on Executors* 202; 1 *Williams on Executors* 600, 601.

II. By the rule of the common law, the widow is entitled to the crops growing at the death of her husband upon that part of the homestead farm which is assigned to her by the heir for her dower. In analogy to this rule it is insisted that when dower is not assigned to the widow, and she continued in possession of the mansion-house and plantation of her husband, under the provision of our statute, (*Nix. Dig.* 209, § 2,) she is entitled to the growing crops upon the plantation at the time of her husband's death. The supposed analogy between the two cases is more seeming than real. By the common law rule, she is entitled to the crops only when dower is assigned by the heir, and then only in the part assigned for dower. *Dyer* 316; 2 *Inst.* 81. Nor does she take it under her quarantine, for which the provision of our statute is a substitute, but she takes it as tenant in dower. And it is cited as an instance of the peculiar favor shown to the tenant in dower above any other tenant for life. *Park on Dower* 355. The reason assigned for the rule is the case in Dyer, where the doctrine appears to have had its origin, (and where it was decided as an incidental question by a closely divided court) is that the wife is in *de optima possessione viri—i. e.,* that she derives title and possession directly from her husband, and therefore above the title of the executor. There is nothing in the rule of the common law, or in its artificial reason, that commends it to favor or adoption as a guide in the construction of the statute. On the other hand, it will be seen that the rule must be partial in its operation, favoring only a particular class of society, those

occupying plantations; that it will enable the heir, by refusing to assign dower, to do great injustice in many instances to legatees and creditors, the growing crops not unfrequently constituting a large portion of the assets of an estate, and that our existing law has rendered it less necessary in any case, by making a fixed provision for the widow out of the personal estate against the claim of all creditors. It is believed, moreover, though the point has never been judicially determined, that the practice in this state has been adverse to the claim of the widow. And the laborious investigation of the cases by the counsel of the defendant, with which the court has been aided, has furnished no authority in support of the claim. I am of opinion that by the laws of this state, the widow, remaining in possession of the mansion and plantation of her husband until dower is assigned her, is not entitled to the crops growing on the plantation at the time of her husband's death.

Under the will of Jacob K. Hiler, the growing crops upon the farm at the time of his death passed, by the devise of the farm, to William J. Hiler, the trustee of Phebe Ann Bartles, for her use. William J. Hiler, who was also executor of the will, died immediately after the testator, without having proved the will or entered upon the execution of the trust. On the 13th of October, 1849, letters of administration upon the estate of Jacob K. Hiler, with the will annexed, were granted to Philip Hiler, the defendant in this suit. As such administrator, he took possession of the growing crops, and has accounted for them, as part of the assets of the estate of Jacob K. Hiler. After the conversion of the crops by the defendant, at March Term, 1850, the Orphans' Court of Morris county appointed Daniel Budd trustee of Phebe Ann Bartles, instead of the trustee named in the will, who now brings this action, for money had and received, to recover the value of the crops converted by the defendant. Is the plaintiff competent to bring the suit? Can the property be recovered in this form of action?

The words of the original devise of the farm are peculiar—"I give to my son William J. Hiler, my executor hereinafter named, *his executors and administrators*, all my farm whereon I now live, &c., during the lifetime of my daughter, Phebe Ann Bartles, in trust," &c. A freehold passed by the devise to the devisee. The estate vested in him. The growing crops passed as a part of the realty. The superadded words, "his executors and administrators," must be rejected as unmeaning surplusage. They clearly took no interest, present or prospective, under the devise. Upon the death of the trustee named in the will, it was competent for the Orphans' Court to appoint a new one. The court had jurisdiction of the subject matter. If their proceedings in making the appointment were irregular, they are not void. The irregularity, admitting it to exist, cannot be inquired into collaterally in this action. The plaintiff is the acting trustee, the party in whom the title of the land vested upon the death of the devisee named in the will never acting or assuming to act as trustee. The plaintiff in this action must be regarded as the legal trustee of Phebe Ann Bartles.

But it is insisted that his powers are prospective only, and that he has not all the powers of the old trustee. The law seems to be settled otherwise. A trustee duly appointed, either under a power or by the court, and in whom the legal estate in the trust property has been vested, stands in the same situation, and is invested with the same powers and privileges with reference to the trust estate as if he had been originally appointed a trustee, with the single exception of confidential or discretionary powers conferred on the original trustee. *Cole* v. *Wade,* 16 *Vesey* 44; *Hill on Trustees* 188, 211. The conversion of the property by the defendant does not impair the plaintiff's right of action. The case is likened, by the defendant's counsel, to that of an administrator *de bonis non,* who is entitled only to such chattels as remain *in specie,* and were not administered by the first executor or adminis-

trator. If the conversion of these goods had been by the first trustee, and not by a tort-feasor, the cases would have been more analagous. But when assets are in the hands of a third person at the death of the administrator, leaving no one as the representative of the original estate, the administrator *de bonis non* may sue for their recovery. 1 *Williams on Executors* 782.

The title to this property having vested in the original trustee, who had power to sue for the conversion of the property by a third party, and all the powers of the original trustee being conferred on the plaintiff by his appointment as new trustee, he may maintain an action for the wrong.

But may a recovery be had in this form of action? It is an action for money had and received, brought for the value of property wrongfully sold by the defendant, by a trustee appointed after the goods were sold and the price received by the defendant. The count for money had and received may be sustained for the price of goods tortiously taken and converted by the defendant. The plaintiff may waive the tort, and sue for the money received by the defendant. *Feltham* v. *Terry*, cited in *Cowp.* 419; 1 *Durn. & E.* 387, *S. C.*, reported as *Feltham* v. *Tyrrell*, *Lofft* 207, 261; 1 *Chit. Pl.* 385.

The plaintiff, on the trial, claimed and recovered the amount for which the goods were sold. Of this sum, the amount of a note for $89.32, taken in part payment for the crops sold, was never received by the defendant. The note proved to be of no value. The weight of authority seems to be, that an action for money had and received will not lie, except when the money has been actually received by the defendant. The taking of a note is not sufficient.

In *Lindon* v. *Hooper*, *Cowper* 419, Lord Mansfield repeats, more than once, that the plaintiff, when goods are tortiously taken and sold, may waive the tort, and recover the *money for which the goods were sold*. But this is ob-

viously a loose form of expression, for, in the same opinion, he lays down the rule explicitly, that the defendant is liable to refund only what *he has actually received contrary to conscience and equity*. In this case there is obvious justice in adopting that rule. The act of the defendant, in selling the goods, was under a mistaken claim of right. He acted in good faith. The amount of the note does not appear to have been lost through his wrongful act. The plaintiff has chosen to resort for redress to an equitable remedy. For the money lost the plaintiff has no claim in equity. The balance of the money of right belongs to the *cestui que trust* of the plaintiff, and it is against good conscience for the defendant to retain it. For that amount the plaintiff is entitled to judgment.

It is not perceived that the fact that the defendant has charged himself with the proceeds of the sale of these goods, as the administrator of Jacob K. Hiler, and that his account has been settled in the Orphans' Court, can at all affect the plaintiff's right of recovery. The decree upon the settlement of that estate is no bar to an action by a third party against the administrator for money with which he has erroneously charged himself. The defendant's remedy is to seek relief against the error in the settlement of the account.

The plaintiff is entitled to judgment upon the verdict upon his entering a *remittitur* for $89.32, the amount of the note not recovered by the defendant.

ELMER, J. Jacob K. Hiler died September 20th, 1849, and by his will, among other things, devised to his son and executor, William J. Hiler, his executors and administrators, his homestead farm, during the lifetime of his daughter, Phebe Ann Bartles, in trust, that he would, during the lifetime of his said daughter, rent the same out to some good tenant or tenants for the best rent he could get, and pay the proceeds to his said daughter, for her own separate use; and after the decease of his said

daughter, he gave and devised said farm to such persons as should be her heirs-at-law of lands held by her in fee simple. William J. Hiler died about two days after his father. The defendant became the administrator, with the will annexed, of said Jacob K. Hiler, deceased, and, as such, took possession of the crops growing on the homestead, inventoried and sold them as assets of the estate. The crops were claimed as belonging to Mrs. Bartles, by virtue of the devise in trust for her, and by the widow of Jacob K. Hiler, who remained in possession of the said homestead until long after they were gathered and sold, and by the administrators of William J. Hiler, deceased, as belonging to the residue of the estate bequeathed to him by the will.

Upon the petition of Joseph A. Bartles and Ann, his wife, the Orphans' Court of the county of Morris made an order, reciting that it appeared by the affidavit of John G. Crater, that due notice of the application had been given to the children and heirs-at-law of said William J. Hiler, deceased, and that the administrators of said William J. Hiler had declined acting, and appointing Daniel Budd, the plaintiff, trustee to execute and perform the trust in said will in behalf of said Phebe Ann Bartles; and on the seventh day of March, 1850, Budd gave bond, in pursuance of the said order, and took upon himself the said trust. In June, 1855, the plaintiff demanded payment of defendant for the crops in question, and being refused, commenced an action of *assumpsit* in this court; and upon the trial, by direction of the judge, recovered the amount for which they were sold.

It appeared that Bartles and his wife, and also the administrator of William J. Hiler, deceased, cited the defendant to account as administrator of the said Jacob K. Hiler, and that he rendered an account, including therein the proceeds of the aforesaid crops. This account was reported to the Orphans' Court, excepted to by the administrators of William J. Hiler, and a decree made thereon,

Budd v. Hiler.

in September, 1852. From this decree there was an appeal to the Prerogative Court, and a decree of that court was made, in February, 1855, reserving the question of indemnity to the administrator, in case of a recovery against him by the trustee or other persons.

Evidence was offered, on behalf of the defendant, that he took a note of one John Davis for part payment of the crops sold, which afterwards turned out not to be good, and for which he was allowed in the final settlement of his account as administrator, which, being objected to, was overruled by the judge.

Several questions having been reserved upon the case, as stated at the circuit, for the consideration of this court, I shall proceed to consider them substantially in the order they were presented by the counsel upon the argument.

*First.* Was the plaintiff duly appointed trustee, and entitled to sue for this money? He was not appointed until after the crops were taken and sold, so that it admits of doubt whether he could maintain trespass or trover. The statute by virtue of which the appointment was made (*Nix. Dig.* 553, § 13,) provides that the trustee so appointed shall have all the power of the trustee refusing or dying. In this case the original trustee died before the crops were taken, and I incline to the opinion that the plaintiff's right related back to the time of his death, like the right of an administrator, who may have trespass or trover for goods taken before the letter was granted. 1 *Williams' Executors* 397. However this may be, I think his right to maintain an action for money had and received, and thus to recover the money remaining in the defendant's hands, if it justly belonged to the trust estate, is clear. It was objected that he was not duly appointed; but it being shown that the original trustee had died, the Orphans' Court had jurisdiction to make the appointment, and even if they did so irregularly, which does not appear, the appointment is not void, but is *prima facie* good, and until set aside, entitles the plaintiff to act,

*Second.* Did the crops, or the proceeds, belong to the trustee? It was insisted that the will gave the trustee no right to dispose of the crops, but only to rent the farm, and therefore they did not pass to the original trustee or to his successor, but if they did not belong to the widow, went into the residuary estate. The devise to the trustee is of an estate, during the life of Phebe Ann Bartles, of a particular farm in trust, to rent it, and apply the proceeds to her use. This vested the estate in him, and carried with it, by necessary implication, all the appurtenances. It is well settled that growing crops go to the devisee of the land. 1 *Williams' Executors* 455, and cases. Words in a will showing a different intent, will, of course, be construed according to the testator's meaning. *West* v. *Moore,* 8 *East* 343. But in this will there are none such. The direction to the trustee is, that he rent the farm to some good tenant or tenants; that he receive the rents, issues, and profits of the said farm, and from time to time pay them to the daughter. This language does not restrict the power and duty of the trustee, as was contended, to the mere receipt and disposition of rent that might accrue upon a demise made by him, but directs him to hold the farm, and pay over to her the rents, issues, and profits arising after the testator's death, however accruing, and carries with it the same right to the emblements that she would have had if the devise had been directly to her. The obvious intention was to give her the property, through the intervention of a trustee, so as to preserve it from the interference of the husband.

*Third.* Did these crops go to the devisee or to the widow? The statute enacts, (*Nix. Dig.* 209, § 2,) that until dower be assigned to her, it shall be lawful for the widow to remain in and to hold and enjoy the mansion-house of her husband, and the messuage or plantation thereto belonging, without being liable to pay any rent for the same. It appears to have been held by five judges, against four, in a case very imperfectly reported in *Dyer* 316 *a,*

where this was not the point in question, that if the heir assigns the widow's dower in land whereon a crop is growing which was sown by the husband, she is entitled to the crop in preference to the executor, she being then in *de optima possessione viri*, above the title of the executor; and this doctrine has since been generally stated by the elementary writers as the established law. I doubt, however, whether it has ever been recognized in this state. Growing crops are so far attached to the freehold that they pass by a deed or a devise, but in other cases they are held to be personal goods, liable to be sold upon a *fieri facias de bonis*, and assets in the hands of the administrator. The widow cannot enter and obtain her dower without suit, nor can the heir take the crops himself. It is a singular anomaly, therefore, if the heir, by the act of assigning dower to the widow in land bearing crops, can divest the executor of his right to them, and thus prevent them from being assets. But whatever may be the law in that case, the one before us stands on a different footing. The question now is, whether a strictly technical rule shall be applied to the widow's estate in her husband's homestead, which she holds under the statute. It is an estate for life, subject to be determined by her own act in quitting the possession or by the assignment of her dower. She is not in, of the possession of her husband, but holds, by virtue of her own possession, an estate to exist only until her right as dowress under her husband's title shall commence. The statute declares that she shall hold until her dower be assigned, "without being liable to pay any rent for the same." She is a *quasi* tenant of the heirs. A lease from them to her, in the words of the statute, would not give her a right to the growing crops, upon the principle of the case in Dyer. This, I think, would have been the true construction of the act had there been no devise of the farm; and now that there is, the right of the devisee to the crops is a ques-

tion between him and the administrator, not in any way affected by the possessory right of the widow.

*Fourth.* Did the account and settlement in the Orphans' and Prerogative Courts preclude the plaintiff's right to this suit? I think not. Those courts had jurisdiction to decide what were or were not assets, as between the administrator and the parties interested in the estate in his hands. But the trustee had no such interest, was no party to those proceedings, and in nowise affected by them. An administrator is undoubtedly liable in trespass or trover, if he takes goods not belonging to the estate; and if it happens that the true owner is also entitled to a legacy or a distributive share, that circumstance will not affect his right of action, unless by some act he should render it unjust that he should recover, and thus create an *estoppel in pais.* That is not alleged in this case. The judge of the Prerogative Court, it appears, reserved the question of indemnity to the administrator, should there be a recovery against him, so that he is probably in no danger of ultimate loss.

*Fifth.* Did the judge err in overruling the evidence offered, that a note which the defendant took for part of the crops he sold was eventually lost? The plaintiff, by his form of action, waived the tort, and claims to recover the money in the defendant's hands to which he is equitably entitled. The objection urged against this, that the defendant took the crops under a claim of right, cannot prevail. Such a claim would not have affected the right to trespass or trover. The case is analogous to the well-settled right to recover in this form, from an executor, for the proceeds of property taken by his testator, and converted into cash. Nor does this case come within the exception, that the defendant will be deprived, by the form of the action adopted, of any benefit which he would have had in the appropriate form of action for the tort. The action is the one most favorable to the defendant. All the cases hold that, to maintain it, he must have re-

ceived the money, or what was agreed to be considered as money. 2 *Greenl. Ev.*, § 117–120. The fact that he had sold the property, and taken a note, might have been presumptive evidence that he had received the money. But in this case the contrary was offered to be shown, and I think it was an error to overrule the evidence on this subject. If the defendant ought to have been charged with taking the note as cash, for want of using due caution or for any other reason, that question should have been submitted to the jury. I am therefore of opinion that, if the plaintiff chooses to deduct the amount of the note from the damages assessed, he may take his judgment for the residue, otherwise a new trial must be ordered.

Justices POTTS and HAINES concurred.

CITED *in Zabriskie, Ex.,* v. *Wetmore,* 11 *O. E. Gr.* 22.